# IN THE SUPREME COURT OF TEXAS

══════════

No. 17-0819

══════════

STATE OF TEXAS, PETITIONER,

v.

R.R.S., A JUVENILE, RESPONDENT

═══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE EIGHTH DISTRICT OF TEXAS

═══════════════════════════════════════════

**Argued January 7, 2020**

JUSTICE BOYD delivered the opinion of the Court.

Under Texas law, a child younger than fourteen cannot legally "consent to sex" and thus, as a matter of law, cannot commit the offense of prostitution. *In re B.W.*, 313 S.W.3d 818, 822 (Tex. 2010). But can a child under fourteen commit the offense of aggravated sexual assault? In this juvenile-delinquency case, R.R.S. pleaded "true" to allegations that he sexually assaulted his younger brothers when he was thirteen years old. Based on his admissions and plea, the trial court found him delinquent. But before the disposition hearing, R.R.S. filed a motion to withdraw his plea and requested a new trial. The trial court denied the motion. The court of appeals reversed, finding the trial court abused its discretion because R.R.S. was not adequately informed about his potential defenses when he entered his plea, particularly the defense that he could not have committed aggravated sexual assault because he could not legally "consent to sex." 536 S.W.3d 67, 80 (Tex. App.—El Paso 2017). We disagree that a child's legal inability to consent to sex

renders the child legally incapable of committing aggravated sexual assault. Finding that the trial court did not abuse its discretion by denying R.R.S.'s request to withdraw his plea, we reverse the court of appeals' judgment and reinstate the trial court's judgment adjudicating R.R.S. delinquent.

## I.
## Background

Thirteen-year-old R.R.S. confessed to his mother that he sexually assaulted his five-year-old twin brothers. His mother contacted the police, who notified the Department of Family and Protective Services. The Department interviewed the twins, who confirmed the assaults. The State filed a petition to adjudicate R.R.S. as delinquent, alleging that he committed two acts of aggravated sexual assault on each of his brothers. *See* TEX. PENAL CODE § 22.021(a) (defining aggravated sexual assault).

The trial court appointed counsel for R.R.S. Prior to the adjudication hearing, R.R.S. filed a written stipulation admitting to the allegations, waiving his right to trial, and acknowledging his understanding that, in light of his admissions, he could be placed on probation or committed to the custody of the Juvenile Justice Department. At the adjudication hearing, the trial court advised R.R.S. of his rights, and R.R.S. stated that he understood them. When the court asked R.R.S. if he knew what a jury trial was, R.R.S. answered, "It's where the people will have a say on what happened. . . . Where you have people decide for like if you're guilty or not." R.R.S. confirmed that he did not "want a jury trial," and the court verbally admonished him that he would receive "some type of sanction" if he pleaded "true" to the charges.

R.R.S. pleaded "true" and verbally confirmed that he was pleading "true" because "it is true." He stated that no one forced him to plead true or promised him anything for his plea. He also admitted that he signed the written waiver of his own free will. R.R.S.'s counsel was present

2

throughout the hearing and agreed to his plea and waiver. The trial court accepted R.R.S.'s plea, entered an order finding that R.R.S. had engaged in the conduct alleged, and scheduled a disposition hearing to occur about a month later.

Before the disposition hearing, R.R.S. hired a new attorney, who filed a motion to withdraw the stipulation and requested a new trial so that R.R.S. could "challenge the factual and legal sufficiency of the evidence in a Jury Trial." At the hearing on R.R.S.'s motion, his counsel argued that R.R.S.'s stipulation was "per se insufficient" to support the adjudication. He also argued that "mitigating factors" existed that could "reduce [R.R.S.'s] culpability," specifically asserting that R.R.S. was himself a victim of sexual abuse by his father. Counsel admitted that R.R.S. had "just change[d] his mind" about his plea, but asserted that R.R.S. did not fully understand his "alternatives in preparing for trial" or that he could potentially have to register as a sex offender "for the rest of his life." Citing a variety of constitutional protections, counsel urged the court to grant a new trial so that a jury could determine "what [R.R.S.'s] intent was."

The trial court denied R.R.S.'s motion and rescheduled the disposition hearing. Prior to that hearing, the juvenile probation department issued a pre-disposition report recommending that the court place R.R.S. on intensive supervised probation until his eighteenth birthday. The report explained that, according to R.R.S. and his mother, R.R.S's father (who himself was sexually abused by a family member when he was five) repeatedly sexually abused R.R.S. from the time R.R.S. was five until he was seven, separated from R.R.S.'s mother, and committed suicide about two years before R.R.S. assaulted his brothers. According to R.R.S., he was "very close to his father before his death" and was "curious" and "thinking about his own sexual abuse that his father imposed on him" while he was assaulting his brothers. R.R.S. expressed that he was "sorry for his

3

actions because his brothers did not deserve what he did to them, as well as, what it has caused his family."

At the disposition hearing, the juvenile probation officer testified that, according to R.R.S.'s mother, she and R.R.S. were appealing the adjudication "not because they're denying the offense or the need for the juvenile to get help to address this sexual behavior[], but because [of] the long-term effect this type of adjudication is going to have on her son." R.R.S.'s mother testified that R.R.S. "kind of goes off of [her] guidance" and that she would not have advised R.R.S. to proceed with the stipulation had she known "how the law could be applied or how testimony could be presented under the law." She confirmed her belief that R.R.S. was "not fully informed of what . . . the consequences would be in the future."[1] At the end of the hearing, the State joined R.R.S.'s request that the court defer any decision on whether he be required to register as a sex offender until he completed probation and treatment and turned eighteen. Consistent with the State's recommendation, the trial court ordered R.R.S. to serve intensive supervision probation until his eighteenth birthday and deferred any decision on sex-offender registration.

The court of appeals reversed, holding that the trial court abused its discretion by denying R.R.S.'s motion to withdraw his stipulation and for a new trial. According to the court of appeals, the evidence was legally insufficient to support the trial court's finding that R.R.S.'s plea was "knowing and voluntary." 536 S.W.3d at 80. In particular, the court reasoned that R.R.S.'s counsel should have advised R.R.S. that he had a defense to the charges because, as a child under fourteen,

---

[1] The court granted the State's relevance objection to the mother's testimony but permitted the mother to complete her testimony to support a bill of review. Neither party addresses the admissibility or relevance of the mother's testimony on appeal.

he could not legally "consent to sex." *Id.* at 78 (citing *B.W.*, 313 S.W.3d at 821), 80. Although the court acknowledged that *B.W.* involved a charge of prostitution, not aggravated sexual assault, it reasoned that *B.W.*'s holding was broad enough to apply to any "offense that includes consent to sex as one of its essential elements." *Id.* at 78 (citing *B.W.*, 313 S.W.3d at 824). The court concluded that R.R.S. should have been informed of this defense "and other pertinent defensive theories applicable to his circumstances." *Id.* at 80. Because he was not, he "misunderstood defenses he could assert that he nonetheless waived when he pled true and judicially confessed to committing the underlying sexual assault offense." *Id.* The court remanded for a new trial so the parties could "address directly, in the first instance, the question of whether the holding of *In re B.W.* extends to the offense of aggravated sexual assault." *Id.*

We granted the State's petition for review.

## II.
## "Consent to Sex"

The decision whether to allow a juvenile to withdraw a "true" plea after a delinquency adjudication rests within the trial court's sound discretion. *Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. [Panel Op.] 1979); *In re S.L.L.*, 906 S.W.2d 190, 193 (Tex. App.—Austin 1995, no writ) (juvenile delinquency case). When, as here, the trial court properly admonished the juvenile at the beginning of the adjudication hearing,[2] the juvenile bears the burden of proving that, despite the court's admonishments, he did not fully understand the consequences and was misled or harmed "such that the plea was rendered involuntary." *Martinez v. State,* 981 S.W.2d

---

[2] *See* TEX. FAM. CODE § 54.03(b) (requiring juvenile court to explain to the juvenile and his parent or guardian the allegations, the potential consequences of the conduct, and the right to challenge the allegations through trial). The court of appeals held the trial court properly admonished R.R.S. and his mother in this case, 536 S.W.3d at 74–75, and R.R.S. does not dispute that holding.

5

195, 197 (Tex. Crim. App. 1998). The court of appeals held that the trial court abused its discretion here because R.R.S. was never advised of his potential defense under *B.W.* The State argues that the court of appeals erred because *B.W.* does not provide a defense to charges of aggravated sexual assault.[3] We agree with the State.

The juvenile involved in *B.W.* was arrested when she offered to engage in sexual conduct with an undercover police officer in exchange for twenty dollars. *B.W.*, 313 S.W.3d at 819. After discovering that B.W. was only thirteen years old, the State initiated a juvenile proceeding to declare her delinquent for engaging in prostitution. B.W. pleaded true to the allegations, the trial court found her delinquent, and the court of appeals affirmed. *Id.* We reversed, holding that B.W. could not have committed the offense of prostitution because "in Texas, 'a child under fourteen cannot legally consent to sex.'" *Id.* at 821 (quoting *May v. State*, 919 S.W.2d 422, 424 (Tex. Crim. App. 1996)).

We explained in *B.W.* that the "notion that an underage child cannot legally consent to sex is of longstanding origin and derives from the common law," but the Texas legislature "has incorporated this rationale into the Texas Penal Code." *Id.* at 820–21. In particular, we noted that,

---

[3] The State's brief first asserts that the court of appeals erred by raising *B.W.* sua sponte, noting that R.R.S. never mentioned *B.W.* or his legal inability to consent to sex in the trial court or in his briefing to the court of appeals. *See San Jacinto River Auth. v. Duke*, 783 S.W.2d 209, 209–10 (Tex. 1990) (per curiam) (addressing preservation requirement and the "corollary" rule prohibiting appellate courts from raising "grounds for reversal sua sponte"). In response, R.R.S. notes that he argued broadly to the court of appeals that "his plea was [made] without adequate understanding of *any* defenses available to him," and asserts that the court of appeals did not err by construing his brief liberally. *See* TEX. R. APP. P. 38.9. In light of the positions the State has taken before this Court, however, we need not decide whether R.R.S. preserved the *B.W.* issue or whether the court of appeals erred by raising it sua sponte. Although the State's brief initially raises this complaint, it later "urges the Court to overrule the court of appeal's opinion that *In re B.W.* applies to non-prostitution cases and clarify that *In re B.W.* should be applied narrowly to cases where prostitution is charged and not generally to crimes of sexual violence." When asked about this in oral argument, the State's counsel again urged us to "provide some guidance as to the proper interpretation of *In re B.W.*," noting that both parties fully briefed the issue to this Court. Because we understand the State to have waived any preservation complaint, we will address the *B.W.* issue as both parties have requested.

under the penal code, a person who intentionally or knowingly engages in non-consensual sexual conduct with another person commits a "sexual assault," but the state need not prove the other person's lack of "consent" if the other person is a child under the age of seventeen. *Id.* at 821 (citing TEX. PENAL CODE § 22.011). When the other person is younger than seventeen but older than thirteen, the code provides certain defenses under which "the child's subjective agreement or assent becomes the main issue in determining whether or not a crime has been committed." *Id.* (citing TEX. PENAL CODE § 22.011(e) (providing defenses when the accused is no more than three years older than the child or is married to the child)). But the code provides no such defenses when the child is younger than fourteen. Instead, it elevates the crime from sexual assault to aggravated sexual assault. *Id.* (citing TEX. PENAL CODE §§ 22.011, .021). Concluding that these provisions confirm the legislature's view that children under the age of fourteen "lack the capacity to consent to sex as a matter of law," we held that "a child under the age of fourteen may not be charged with" prostitution. *Id.* at 826.

Relying on *B.W.*, the court of appeals concluded here that, because "children under fourteen cannot consent to sex, the rationale then follows that the state may not adjudicate such a young offender for an offense that includes consent to sex as one of its essential elements." 536 S.W.3d at 78. The court then concluded that aggravated sexual assault qualifies as such an offense because the aggravated sexual assault statute was "central to [*B.W.*'s] holding . . . that the Legislature did not intend to prosecute children under fourteen for offenses that include legal capacity to consent to sex." *Id.*[4] The court thus concluded that R.R.S. did not "make a voluntary, knowing, and

_____

[4] Relying on the El Paso court of appeals' decision here, the Fourteenth District Court of Appeals in Houston also recently held, "Because a 13-year-old child cannot knowingly engage[] in a sexual act as a matter of law, [the

informed waiver of his constitutional rights" because he was not fully "informed prior to the entry of his plea of true of the potential defense of lack of capacity to consent to sex as a matter of law." *Id.* at 80.

While we agree that section 22.021 (the aggravated sexual assault statute) was "central" to our decision in *B.W.*, our reasoning in *B.W.* does not support the court of appeals' ultimate conclusion. We explained in *B.W.* that sections 22.021 (the aggravated sexual assault statute) and 22.011 (the sexual assault statute) confirm the legislature's recognition that children under fourteen cannot "consent to sex," but we never suggested that either of those statutes requires proof that the *accused* consented to sex. Rather, we explained that the statutes confirm the legislature's recognition that children under fourteen cannot consent to sex by providing no defense when the *victim* is younger than fourteen. *B.W.*, 313 S.W.3d at 821. Whether a child's legal inability to consent to sex renders the child incapable of committing a particular offense depends on whether the *accused's* consent is an element of the offense,[5] not whether the victim's consent may provide a defense.

Similar to the offense of prostitution, the offense of aggravated sexual assault requires that the accused acted "intentionally or knowingly." *Compare* Tex. Penal Code § 22.021 (requiring that the accused act "intentionally or knowingly" to commit aggravated sexual assault) *with id.* § 43.02 (requiring that the accused act "knowingly" to commit prostitution). A person acts

---

child] cannot be prosecuted for aggravated sexual assault under section 22.021 of the Penal Code." *Matter of T.V.T.*, No. 14-18-00807-CV, 2019 WL 6974971, at *3 (Tex. App.—Houston [14th Dist.] Dec. 19, 2019, no pet. h.).

[5] *See, e.g.*, *In re H.L.A.*, No. 01-12-00912-CV, 2014 WL 1101584, at *6 (Tex. App.—Houston [1st Dist.] Mar. 20, 2014, no pet.) (mem. op.) (holding that thirteen-year-old's legal inability to consent to sex did not render him incapable of committing offense of "unlawful restraint" because "the elements of unlawful restraint . . . do not require proof that [the child] engaged or offered or agreed to engage in sexual conduct").

"intentionally" when "it is his conscious objective or desire to engage in the conduct or cause the result," and acts "knowingly" when "he is aware of the nature of his conduct or that the circumstances exist . . . [or] that his conduct is reasonably certain to cause the result." *Id.* § 6.03. Both offenses require a similar desire or awareness on the accused's part, but the distinction lies in what the offenses require the accused to be *aware of*.

As we explained in *B.W.*, a person commits the offense of prostitution when the person "knowingly offers to engage, agrees to engage, or engages in sexual conduct for a fee." *B.W.*, 313 S.W.3d at 820 (quoting TEX. PENAL CODE § 43.02(a)(1)).[6] The offense requires not just that the person engaged in sexual conduct, but that the person engaged in sexual conduct, or offered or agreed to do so, as part of an agreed exchange with another ("for a fee"). As we repeatedly noted throughout our opinion in *B.W.*, the offense of prostitution requires that the accused reached, or offered to reach, some form of "agreement" with the other person to engage in sexual conduct. *See B.W.*, 313 S.W.3d at 819 (noting that B.W. admitted she had "knowingly *agree[d]* to engage in sexual conduct . . . for a fee") (emphasis added), 820 (explaining that "'knowing agree[ment]' suggests agreement with an understanding of the nature of what one is *agreeing* to do" and that "younger children lack the capacity to appreciate the significance or the consequences of *agreeing* to sex") (emphasis added), 821–22 (rejecting idea that children under fourteen can "understand the nature and consequences of their conduct when they *agree* to commit a sex act for money")

_____

[6] Since our decision in *B.W.*, the legislature has amended section 43.02 to provide that a "person commits an offense if the person knowingly offers or agrees to receive a fee from another to engage in sexual conduct." TEX. PEN. CODE § 43.02(a) (amended by Acts 2017, 85th Leg., R.S., Ch. 685 (H.B. 29), Sec. 36, eff. September 1, 2017. Reenacted and amended by Acts 2017, 85th Leg., R.S., Ch. 685 (H.B. 29), Sec. 37, eff. September 1, 2017.).

(emphasis added), 822 (relying on the "longstanding rule that children under fourteen lack the capacity to understand the significance of *agreeing* to sex") (emphasis added).

The requirement that the accused "agreed" or offered to "agree" with another person is what makes the accused's ability to "*consent* to sex" essential to the offense of prostitution. While proving consent (or a lack of consent) to sexual conduct is often difficult and may depend on a wide variety of circumstances,[7] an agreement or mutual assent between two or more persons lies at the heart of what it means to "consent." *See, e.g.*, *Consent*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A voluntary yielding to what another proposes or desires; agreement, approval, or permission regarding some act or purpose. . . ."). As we explained in *B.W.*, younger children cannot commit the offense of prostitution because they "lack the capacity to appreciate the significance or the consequences of *agreeing* to sex, and *thus* cannot give meaningful consent." *B.W.*, 313 S.W.3d at 820 (emphases added). Because they "lack the capacity to understand the significance of *agreeing* to sex," and thus "cannot consent to sex as a matter of law," the child's "agreement" required to commit prostitution cannot "reach the 'knowingly' standard the statute requires." *Id.* at 822 (emphasis added).

The offense of aggravated sexual assault, by contrast, does not require that the accused reach or offer to reach any kind of agreement with the other person. To the contrary, the offense only occurs if there is *no* agreement between the accused and the other person. TEX. PEN. CODE § 22.021. Under section 22.011, a person commits a sexual assault if the person intentionally or knowingly (A) "causes the penetration of the anus or sexual organ of another person by any

---

[7] *See, e.g.*, TEX. PEN. CODE § 22.011(b) (describing various circumstances under which a sexual assault occurs "without the consent of the other person").

means," (B) "causes the penetration of the mouth of another person by the sexual organ of the actor," or (C) "causes the sexual organ of another person . . . to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor." *Id.* § 22.011(a)(1). If the other person is an adult, the conduct constitutes sexual assault if the accused acts "without that person's consent," *id.*, but if the other person is a child under seventeen, the conduct constitutes sexual assault regardless of whether the other person consented, *id.* § 22.011(a)(2), (c)(1); *see Hernandez v. State*, 861 S.W.2d 908, 909 (Tex. Crim. App. 1993) (en banc) ("[C]onsent (or nonconsent) is not an element in proving [sexual assault under section 22.011(a)(2)]."). And if the other person is younger than fourteen, the accused cannot assert any consent-based defenses, and the offense is elevated to an aggravated sexual assault. *Id.* §§ 22.011(c), .021(a)(2)(B). In short, whether the accused committed a sexual assault or an aggravated sexual assault may depend on whether the other person agreed with the accused to engage in the conduct, but it does not depend on whether the accused agreed with the other person to do so.

Here, the State alleged, and R.R.S. admitted, that he caused his sexual organ to penetrate his five-year-old brother's anus and caused his other five-year-old brother's sexual organ to penetrate R.R.S.'s mouth. Such conduct constitutes aggravated sexual assault under section 22.021(a) regardless of whether either party consented or "agreed" to the conduct. All that the statute requires is that R.R.S. "desire[d] to engage in the conduct or cause the result" or was "aware that his conduct [was] reasonably certain to cause the result." *Id.* § 6.03(a), (b). Unlike the offense of prostitution, which requires proof that the accused reached an agreement with another person to engage in sexual conduct or offered to reach such an agreement, R.R.S.'s legal inability to "consent to sex" did not render him illegally incapable of committing the offense of aggravated sexual

11

assault. As a result, the court of appeals erred in holding that R.R.S.'s lack of knowledge of his inability to consent to sex required the trial court to grant his motion to withdraw his plea and for a new trial.

### III.
### Other Grounds

Although R.R.S. did not raise his legal inability to consent to sex in the trial court, he did raise other grounds that he alleged caused his "true" plea to be involuntary. The court of appeals did not reach these grounds. In the interest of judicial economy, we address them here instead of remanding to the court of appeals. *See* TEX. R. APP. P. 53.4; *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018).

R.R.S. first argues that he was not adequately informed that, by pleading "true," he might have to register as a sex offender.[8] But under Texas law, required registration as a sex offender is a "collateral consequence," and the accused's ignorance of a collateral consequence does not render a plea involuntary. *See, e.g.*, *Anderson v. State*, 182 S.W.3d 914, 917, 921 (Tex. Crim. App. 2006) (en banc) ("Considering the record as a whole, we have fair assurance that no substantial right involving the appellant's decision to plead guilty was affected by the trial court's error in failing to admonish him of the registration requirement for convicted sex offenders.").[9] R.R.S.

---

[8] After the court of appeals rendered its decision in this case, R.R.S. successfully completed his probation requirements and the trial court excused him from registering as a sex offender.

[9] *See also State v. Collazo*, 264 S.W.3d 121, 128 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Anderson*, 182 S.W.3d at 918 ("The failure to admonish a defendant as to the non-punitive consequence of mandatory sex offender registration does not violate the due process clause or render his plea involuntary.")); *Ducker v. State*, 45 S.W.3d 791, 796 (Tex. App.—Dallas 2001, no pet.) ("[W]e hold that the trial court's failure to admonish appellant on the sex offender registration requirement constitutes harmless error and did not render his plea of guilty involuntary."); *Guzman v. State*, 993 S.W.2d 232, 236 (Tex. App.—San Antonio 1999, pet. ref'd) ("[S]uch registration is a collateral consequence of a guilty plea, not a direct consequence, and the trial court's failure to admonish a defendant of such requirement does not invalidate a guilty plea.").

does not dispute that the trial court properly admonished him regarding the direct consequences of his plea, and "when a defendant is fully advised of the direct consequences of [his] plea, [his] ignorance of a collateral consequence does not render the plea involuntary." *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997). As a result, R.R.S.'s ignorance of the fact that the trial court could have required him to register as a sex offender did not require the trial court to grant his new-trial motion.

R.R.S. next argues that the evidence that his father sexually abused him and that he was thinking of that abuse when he assaulted his brothers created "a factual dispute" regarding "his intentions during the commission of the offense." We agree with the State, however, that such evidence—while certainly relevant as mitigating evidence at the time of disposition—could not serve to negate the intent that R.R.S. himself admitted. *See, e.g.*, *Cornet v. State*, 417 S.W.3d 446, 450 (Tex. Crim. App. 2013) (distinguishing statute's intent requirement from medical-care justification). R.R.S. never disputed that he intentionally and knowingly engaged in the conduct that constitutes aggravated sexual assault. The evidence regarding his thoughts and motivations for doing so did not negate his intent and knowledge and did not require the trial court to grant his new-trial motion.

Finally, R.R.S. argues that the evidence before the trial court at the time of his adjudication was insufficient to support the trial court's finding. As we have described, that evidence included R.R.S.'s written waiver, stipulation, and admission, followed by his verbal plea after the trial court duly admonished him. In the absence of any contrary record evidence, a juvenile's stipulation to the charges and admission to the allegations is sufficient on its own to support the trial court's adjudication of delinquency. *See In re M.C.S., Jr.*, 327 S.W.3d 802, 805 (Tex. App.—Fort Worth

2010, no pet.) ("[T]he stipulation comprises sufficient evidence to support the statutory elements of [the crime]."); *Matter of R.L.S.*, 707 S.W.2d 726, 728 (Tex. App.—Beaumont 1986, no writ) ("The plea of true and the stipulation is sufficient for a judicial confession."). We conclude that the trial court did not abuse its discretion by adjudicating R.R.S. delinquent based on the record before it.

### III.
### Conclusion

We hold that the trial court did not abuse its discretion by denying R.R.S.'s motion to withdraw his stipulations and admissions and requesting a new trial. We reverse the court of appeals' judgment and reinstate the trial court's judgment.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: March 27, 2020