# Supreme Court of Texas

No. 24-0273

Abigail Dalila Cerna, as Next Friend of R.W.,

*Petitioner*,

v.

Pearland Urban Air, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**Argued March 19, 2025**

JUSTICE BLAND delivered the opinion of the Court.

Before compelling arbitration, a court must conclude that the parties agreed to arbitrate disputes arising out of their relationship. If so, the court next determines whether the parties' present claims fall within the scope of their agreement to arbitrate. Parties sometimes further agree, however, to require that an arbitrator decide the scope question. In such cases, a court must compel arbitration upon finding that (1) a valid agreement to arbitrate exists, and (2) the agreement

unmistakably delegates to the arbitrator the question of whether the parties' present claims fall within the agreement's scope.

In this case, a mother signed a release agreement for herself and her child upon their entry into a trampoline park. The agreement includes a provision that sends disputes arising out of activity at the park to arbitration, including disputes over the scope, validity, and arbitrability of the provision. About three months after signing the agreement, the mother and her child returned to the park, entering it without signing another release. The mother later sued the park, alleging that her child was injured during their second visit to the park.

The trial court denied the park's motion to compel arbitration. The court of appeals reversed, holding that whether the arbitration agreement extended to a second visit to the park is a challenge related to the scope of the signed release, not its existence. Because the parties had agreed to delegate such issues to an arbitrator, the court of appeals held that the trial court erred in declining to compel arbitration.

We agree with the court of appeals. Given the existence of a valid agreement to arbitrate, the question of the agreement's duration is one asking whether the claims asserted fall within the agreement's scope. In this case, the parties agree that the arbitration agreement is valid but disagree as to whether it governs beyond the first visit to the park. Because the parties delegated this dispute to an arbitrator to decide, we affirm the court of appeals' judgment.

## I

Abigail Cerna and her child visited Urban Air Trampoline and Adventure Park in Pearland on August 30, 2020. Upon entering the

2

park, Cerna signed a "Customer Release, Assumption of Risk, Waiver of Liability, and Indemnification Agreement" (the August Agreement). In the agreement, Cerna released all claims against Urban Air and its related entities in exchange for entrance to the Pearland location "or any other premises owned or operated by Urban Air wherever located."

The August Agreement contains a broadly worded arbitration clause. Among other provisions, the clause requires disputes relating to "the scope, arbitrability, or validity" of the agreement to be "settled by binding arbitration before a single arbitrator":

> Any dispute or claim arising out of or relating to this Agreement, breach thereof, the Premises, Activities, property damage (real or personal), personal injury (including death), or the scope, arbitrability, or validity of this arbitration agreement (Dispute) shall be brought by the parties in their individual capacity and not as a plaintiff or class member in any purported class or representative capacity, and settled by binding arbitration before a single arbitrator administered by the American Arbitration Association (AAA) per its Commercial Industry Arbitration Rules in effect at the time the demand for arbitration is filed.

Neither the arbitration clause nor any other clause of the agreement contains express language as to the duration of the agreement.

Cerna and her child returned to Pearland Urban Air on November 21, 2020, and did not sign another agreement. At this visit, Cerna alleges that her child was seriously injured when he cut his foot while jumping on a trampoline.

After Cerna filed suit against Urban Air, it moved to compel arbitration. Urban Air contended that the August Agreement requires Cerna to arbitrate her claims because they arise out of activity on Urban

3

Air's premises. Pertinent to the issue before our Court, Cerna responded that the August Agreement cannot apply to the November visit, and thus no agreement to arbitrate exists for the November visit. Following a hearing, the trial court denied Urban Air's motion.

On interlocutory appeal, the court of appeals reversed.[1] The court first held that the August Agreement was a valid contract binding Cerna and her child.[2] With an agreement established, the court then held that Cerna's argument—that the August Agreement did not apply to the November visit—is a challenge to its scope.[3] Finally, the court held it could not decide this question of scope because the August Agreement expressly delegates this question to an arbitrator.[4]

## II

A party seeking to compel arbitration must establish that "(1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope."[5] Courts decide the first inquiry—

---

[1] 693 S.W.3d 711, 717 (Tex. App.—Houston [14th Dist.] 2024).

[2] *Id.* at 716.

[3] *Id.* at 716–17.

[4] *Id.* at 717. The court of appeals further held that the second issue Cerna raised—whether the Texas Arbitration Act required the parties' attorneys to sign the agreement—was delegated to the arbitrator. *Id.* The concurring justice would have held that this argument is a formation challenge that a court must decide, but that the agreement provides that the Federal Arbitration Act governs it. *Id.* at 717–18 (Christopher, C.J., concurring). Cerna does not raise this issue before this Court.

[5] *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011).

whether an agreement to arbitrate exists.[6] A court must not compel arbitration absent a valid agreement to arbitrate.[7]

The second inquiry accepts the existence of an agreement and turns to examine the agreement's breadth. Like other contractual provisions, parties can agree to delegate this question to an arbitrator to decide rather than a court.[8] Courts enforce these "delegation provision[s]," however, only if they "clearly and unmistakably" delegate matters of scope to an arbitrator.[9]

In this case, Cerna contends that the relevant question is whether an arbitration agreement *exists* for her and her child's November visit to Urban Air. In Cerna's view, the trial court properly denied Urban Air's motion to compel arbitration because Urban Air produced no release applicable to the November visit, and the August Agreement does not state the length of its duration or that it governs beyond the August visit. Under the court of appeals' analysis, Cerna argues,

---

[6] *See* Tex. Civ. Prac. & Rem. Code § 171.021(b) ("If a party opposing an application [to compel arbitration] made under Subsection (a) denies the existence of the agreement, the court shall summarily determine that issue."); 9 U.S.C. § 4 (requiring courts to be "satisfied that the making of the agreement for arbitration . . . is not in issue" before compelling arbitration under the Federal Arbitration Act); s*ee also TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 720 (Tex. 2023) ("We recognize that because arbitration is a matter of contract, courts must decide in the first instance whether a valid arbitration agreement exists."); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists.").

[7] *TotalEnergies*, 667 S.W.3d at 701.

[8] *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018).

[9] *TotalEnergies*, 667 S.W.3d at 719.

disputes will be delegated to arbitration in perpetuity and without judicial inquiry as long as the parties once agreed to do so. Instead, courts should examine whether an agreement exists that governs the particular dispute—in this case, the November visit.

Urban Air responds that neither party disputes the existence of an agreement to arbitrate—the August Agreement. Cerna simply challenges whether the November visit falls within the agreement's scope. Because the August Agreement contains a clear and unmistakable delegation provision, however, Urban Air argues an arbitrator must decide this challenge in the first instance.

## A

Courts decide challenges "to the very existence of an agreement to arbitrate."[10] If a party challenges whether an agreement to arbitrate formed, a court applies ordinary contract law principles to ensure an enforceable agreement exists.[11] So too when an arbitration agreement signatory attempts to compel a non-signatory to arbitrate, which raises the question of whether an agreement to arbitrate exists between those parties.[12] Finally, if the parties to an arbitration agreement subsequently enter into another agreement, that also may give rise to

---

[10] *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 189 (Tex. 2009).

[11] *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex. 2003).

[12] *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015).

an existence challenge, because it raises a question whether the first agreement compelling arbitration "still exists at all."[13]

Once a court determines that an agreement to arbitrate exists, the particulars of the agreement control the court's next steps. Ordinarily, a court decides whether the parties' claims fall within the agreement's scope.[14] But because arbitration agreements are contracts, the parties can agree that an arbitrator must decide whether the parties' claims fall within the agreement—or "are arbitrable."[15] When an agreement unmistakably delegates questions of the applicability of the agreement to the parties' claims, a court must compel arbitration on the matters the parties delegated.[16] Such matters can include questions

---

[13] *Transcor Astra Grp. S.A. v. Petrobras Am. Inc.*, 650 S.W.3d 462, 480 (Tex. 2022). The United States Supreme Court adopted this holding last year in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024). *See id.* at 152 ("[W]here, as here, parties have agreed to *two* contracts—one sending arbitrability disputes to arbitration, and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs.").

[14] *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001) ("Once the movant establishes an agreement, the court must then determine whether the arbitration agreement covers the nonmovant's claims.").

[15] *RSL Funding*, 569 S.W.3d at 120.

[16] *Id.* The "question[s] of arbitrability" subject to the clear and unmistakable standard are those that "contracting parties would likely have expected a court to have decided" absent any agreement to the contrary. *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 525 (Tex. 2019) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). "Such circumstances are limited to (1) whether the parties have a valid arbitration agreement at all and (2) whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *Id.*

about the scope or validity of the arbitration clause in a given context.[17] A delegation provision removes the court's power to decide such challenges.[18]

In this Court, Cerna does not dispute that the August Agreement is valid and binds her to arbitrate claims arising from the August visit. But because the August Agreement lacks durational language, she claims that her challenge to its application to the November visit is one going to the existence of a contract for that visit.

Cerna's challenge, however, is to the *scope* of the August Agreement, not its *existence*. Cerna does not dispute its formation or whether it applies to her; nor does she invoke a superseding agreement for the November visit that could challenge the present existence of the August Agreement.[19] Rather, Cerna questions the extent of the agreement's applicability—that is, whether it "exists as to the claims [she] has asserted in this suit."[20] Cerna argues that the August Agreement does not apply to the present dispute because the agreement

---

[17] *See TotalEnergies*, 667 S.W.3d at 702 (describing delegable arbitrability disputes as those over "the validity and scope of [the parties'] arbitration agreement").

[18] *Robinson*, 590 S.W.3d at 532.

[19] *See Transcor Astra*, 650 S.W.3d at 480 ("Because the parties here dispute whether their arbitration agreement continued to exist after the 2012 settlement agreement, we agree with the trial court and court of appeals that courts must decide that issue.").

[20] *TotalEnergies*, 667 S.W.3d at 720.

does not apply to her November visit. Such applicability arguments are recognized as ones of scope.[21]

Like Cerna, other parties seeking to avoid arbitration have attempted to reframe a scope challenge into one that asks whether an "arbitration agreement *exists* as to the claims it has asserted in this suit."[22] We rejected such an attempt in *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC*, holding that this framing "collapses two separate inquiries" of existence and scope.[23] We observed that the two inquiries must remain separate in recognition of the principle that only courts can decide existence but scope can be delegated.[24]

An argument about an agreement's "existence," when confined to a particular claim, crosses the threshold from existence to scope. Such a dispute concerns not *if* an agreement to arbitrate exists, but *which* claims are arbitrable under that valid agreement.[25] We have declined to recognize such challenges as going to existence when a party otherwise concedes that an agreement has formed. In *TotalEnergies*, the party seeking to avoid arbitration contended that its claims did not arise out

---

[21] *E.g.*, *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021) ("The parties agree that there is a valid agreement to arbitrate. But plaintiffs assert that their claims are not within the scope of the arbitration clause because it includes a clear carve-out for disputes arising out of third-party claims.").

[22] *TotalEnergies*, 667 S.W.3d at 720 (emphasis added).

[23] *Id.*

[24] *Id.*

[25] *See id.* (explaining that an argument that "the valid arbitration agreement does not apply to the claims it asserted in this suit because those claims do not arise out of the agreement that contains the valid arbitration agreement" goes to the scope of the agreement and not its existence).

of the parties' arbitration agreement.[26] But its challenge contested the arbitrability of the particular dispute under that admittedly existing agreement, and thus we held that the issue was one of scope properly delegated to an arbitrator.[27] Similarly, in *RSL Funding, LLC v. Newsome*, we held that a party who "concedes the existence of the agreement" is subject to a delegation clause requiring an arbitrator to decide the scope of the agreement.[28]

**B**

To permit judicial inquiry into the present dispute would subsume scope questions into existence questions, eroding enforcement of the parties' delegation provision. The arbitration provision within the August Agreement states that Cerna and Urban Air will arbitrate any dispute regarding the "scope, arbitrability, or validity of this arbitration agreement." We have recognized similar language as sufficiently clear and unmistakable to enforce it, and we do so in this case.[29] The parties have agreed that an arbitrator, not the courts, decides whether the August Agreement applies to subsequent visits, and we must respect

---

[26] *Id.* at 719.

[27] *Id.* at 720; *see also id.* at 719 ("[T]he fact that the parties' arbitration agreement may cover only some disputes while carving out others does not affect the fact that the delegation agreement clearly and unmistakably requires the arbitrator to decide whether the present disputes must be resolved through arbitration.").

[28] 569 S.W.3d at 126.

[29] *See Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 587 (Tex. 2022) (holding language that "[a]rbitration shall be the sole forum to determine the validity, scope and brea[d]th of this Agreement" was a clear and unmistakable delegation of arbitrability (alterations in original)).

this agreement.[30] We thus express no opinion on whether the August Agreement governs the November visit.[31]

Finally, we observe that existing law provides protection against rubberstamping the delegation of disputes to an arbitrator. The "clear and unmistakable" standard prevents parties from unwittingly implying an agreement to delegate arbitrability questions.[32] A subsequent agreement may also require a court to decide whether the prior agreement containing a delegation provision remains in existence, but Cerna does not contend that there was such an agreement here.[33] If, as Cerna suggests, a party seeks to compel arbitration of a dispute wholly outside an existing agreement, it is the arbitrator who decides the question, including whether compelling arbitration in such circumstances was frivolous.[34] This approach carries out the "two-step

---

[30] *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("[A] court must hold a party to its arbitration contract just as the court would to any other kind.").

[31] *See TotalEnergies*, 667 S.W.3d at 721 ("We hold that the parties clearly and unmistakably delegated to the . . . arbitrator the decision of whether the parties' controversy must be resolved by arbitration. We express no opinion on the merits of the parties' controversy or on whether the arbitrator or the courts must resolve them.").

[32] *Id.* at 702 (quoting *Robinson*, 590 S.W.3d at 525, 532).

[33] *See Coinbase*, 602 U.S. at 152 (recognizing that to allow such disputes to be delegated to an arbitrator despite a challenge to the continued existence of the agreement would "impermissibly elevate a delegation provision over other forms of contract" (internal quotations omitted)).

[34] In eliminating the court-created "wholly groundless" exception to delegations of arbitrability in *Henry Schein, Inc. v. Archer & White Sales*, the United States Supreme Court held that the exception "confuses the question of who decides arbitrability with the separate question of who prevails on

process" of existence and scope necessary when a valid delegation provision exists.[35] Courts decide whether an agreement exists in the first step but lack the authority to engage in the second upon confirming the validity of a delegation provision.

* * *

Upon deciding that the parties agreed to arbitrate, courts must respect the agreement's terms—including terms delegating to an arbitrator disputes over whether particular claims fall within the parties' agreement. In challenging the August Agreement's applicability to her November visit, Cerna asks a court to decide that the claims she brings are excluded from that agreement. The court of appeals properly held that this decision is one reserved to the arbitrator under the terms of the parties' agreement. Accordingly, we affirm its judgment and remand the case to the trial court to issue an order compelling arbitration.

Jane N. Bland
Justice

---

arbitrability. When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." 586 U.S. at 71.

[35] *TotalEnergies*, 667 S.W.3d at 720; *see also RSL Funding*, 569 S.W.3d at 121 ("So the proper procedure is for a court to first determine if there is a binding arbitration agreement that delegates arbitrability to the arbitrator. If there is such an agreement, the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate.").

12

**OPINION DELIVERED:** May 23, 2025