# IN THE SUPREME COURT OF TEXAS

═══════════
No. 16-0998
═══════════

RSL FUNDING, LLC AND RSL SPECIAL-IV LIMITED PARTNERSHIP, PETITIONERS,

v.

RICKEY NEWSOME, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS
═══════════════════════════════════════

**Argued October 9, 2018**

JUSTICE DEVINE delivered the opinion of the Court.

The Structured Settlement Protection Act requires court approval to validate the transfer of a payee's structured-settlement-payment rights to another. TEX. CIV. PRAC. & REM. CODE § 141.004. The court here approved the transfer but did so in two different orders, creating a dispute between the parties over which order should control. One of the parties moved to compel arbitration of this dispute and others under an arbitration provision included in their transfer agreement. The trial court denied the motion, and the court of appeals affirmed, concluding that the dispute over which order controlled was not an arbitrable issue despite the existence of an arbitration agreement that assigned issues of arbitrability to the arbitrator. 559 S.W.3d 169, 175 (Tex. App.—Dallas 2016) (mem. op.). Because the parties agreed to have the arbitrator decide issues of arbitrability, we conclude that the court of appeals erred in determining that the dispute here was one that could not be arbitrated.

Accordingly, we reverse the court of appeals' judgment and remand the case to the trial court with instructions to grant the motion to compel arbitration.

**I**

Rickey Newsome settled a personal injury suit several decades ago and has since received structured settlement payments from Allstate Insurance Company. RSL Funding and its related entities offer lump-sum payments to purchase structured-settlement agreements from recipients like Newsome. Newsome assigned 120 monthly payments of varying amounts to RSL in exchange for a payment of $53,000. Their contract included a mandatory arbitration clause that identified the Federal Arbitration Act as the controlling law. The clause delegates to an arbitrator not only contractual disputes but also whether a dispute is arbitrable. The relevant part reads:

> Disputes under this Agreement of any nature whatsoever . . . shall be resolved through demand by any interested party to arbitrate the dispute. . . . The parties hereto agree that the issue of arbitrability shall likewise be decided by the arbitrator, and not by any other person. That is, the question of whether a dispute itself is subject to arbitration shall be decided solely by the arbitrator and not, for example by any court.

Under the Structured Settlement Protection Act, a court must approve a transfer of structured-settlement payments before the transfer is effective. TEX. CIV. PRAC. & REM. CODE § 141.004. The court that approves the transfer is the court of original jurisdiction that authorized the settlement. *Id.* § 141.002(2)(A). But if the original court no longer has jurisdiction, approval must be sought from a district court or other designated court in the payee's county. *Id.* § 141.002(2)(B). Because the original court signed the judgment on the structured settlement decades before this transfer, it no longer retained jurisdiction, and so RSL petitioned a district court in Newsome's resident county to approve the agreement.

2

The district court signed an order approving the transfer that included the requisite statutory findings. *See id.* § 141.004 (stating the "express findings" the court must make to approve the transfer). The order, however, included an additional requirement in a handwritten note by the judge that provided: "Transferee to pay Mr. Newsome the sum of $53,000 in 10 days from this order being signed or transferee will be required to pay Mr. Newsome $106,000." The transferee did not pay the $53,000 within the allotted ten days.

Seven months later, Newsome wrote a letter to the judge complaining that he had not been paid. The district court responded by ordering the parties to mediation, which resulted in an agreed motion to remove the ten-day payment penalty from the order approving the transfer. The court granted the motion and issued a corrected order nunc pro tunc.

After several more months passed without payment, Newsome filed a new pleading in the district court, titled "Original Petition for Bill of Review and Application for Injunctive Relief." This pleading attacked both the original and nunc pro tunc approval orders. Newsome argued the nunc pro tunc order was void because it corrected a judicial error after the expiration of the court's plenary power. He further asserted that the court's original transfer order therefore remained in full force and effect and subject to enforcement. But Newsome also asked the district court, in the alternative, to vacate the original approval order, although he did not assert a basis for doing so or specifically request that relief in the bill of review's prayer. A subsequent motion for summary judgment elaborated on the basis for Newsome's alternative request, asserting that the original transfer order should be vacated because RSL had not complied with it. RSL responded that it had not yet paid Newsome because of his refusal to accept the agreed purchase price of $53,000 and his failure to

3

cooperate in transferring the settlement payments to RSL. RSL moved to compel arbitration of the dispute under the parties' contract, while Newsome pursued his motion for summary judgment.

The district court granted Newsome's summary judgment motion in part, declaring the nunc pro tunc order void, but the court did not decide whether the original transfer order should also be set aside. Instead, the court reserved judgment on Newsome's alternative claim for future proceedings. The court also denied RSL's motion to compel arbitration.

RSL took an interlocutory appeal from the district court's order denying arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 51.016 (authorizing interlocutory appeal). In a divided decision, the court of appeals affirmed the district court's order, reasoning that Newsome's bill of review, which challenged the approval orders' validity, offered "nothing for an arbitrator to determine" because approval of such transfers under the Structured Settlement Protection Act was a "purely judicial function." 559 S.W.3d at 175. A dissenting justice disagreed, arguing that the parties had agreed to arbitrate all matters raised in Newsome's bill of review, including whether the nunc pro tunc order was effective and whether the penalty added by the trial court properly altered the parties' transfer agreement. *Id.* at 176 (Schenck, J., dissenting).

RSL petitioned this Court to review the order denying arbitration, and we granted its petition.

## II

The U.S. Supreme Court has explained that there are three types of disagreements in the arbitration context: (1) the merits of the dispute; (2) whether the merits are arbitrable; and (3) who decides the second question. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The default rule for the third question is that arbitrability is a threshold matter for the court to decide.

4

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008). But a contractual agreement to submit the arbitrability question to an arbitrator is valid and must be treated like any other arbitral agreement. *First Options*, 514 U.S. at 943. Arbitration clauses that assign gateway questions such as the arbitrability of the dispute are an established feature of arbitration law. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). This Court, too, has held that courts must enforce a valid arbitration agreement that places arbitrability with the arbitrator rather than a court. *Forest Oil*, 268 S.W.3d at 61.

RSL contends that the court of appeals impermissibly decided arbitrability itself in the face of a valid arbitration clause that explicitly assigns arbitrability disputes to the arbitrator. Newsome does not challenge the validity or effect of the arbitration clause itself. He contends that the arbitration clause is inapplicable here because this dispute must be decided by a court due to the bill of review and Structured Settlement Protection Act context. He also submits that under the Structured Settlement Protection Act no binding agreement (including an arbitration provision therein) exists until a court resolves the present dispute regarding the validity of the approving court's order.

The dispute thus presents two legal questions for us to decide. First, does an arbitral delegation clause in a court-approved structured settlement transfer agreement apply when the validity of the approving court order is at issue? The court of appeals held it does not. 559 S.W.3d at 175. Second, does a dispute about the validity of approving court orders under the Structured Settlement Protection Act affect the existence of an enforceable arbitration agreement? The court

5

of appeals did not answer this question. Our review of these legal determinations is, of course, de novo. *Forest Oil*, 268 S.W.3d at 55 & n.9.

## III

We first consider the court of appeals' conclusion and Newsome's arguments that the case should not be sent to arbitration because of its unique circumstances–a bill of review attacking approving court orders under the Structured Settlement Protection Act. RSL argues that because the parties agreed to delegate arbitrability to the arbitrator the weight of authority required the dispute be sent to arbitration. We agree.

## A

A valid arbitration agreement creates a strong presumption in favor of arbitration. *Rachal v. Reitz,* 403 S.W.3d 840, 850 (Tex. 2013). Both Texas and federal law require the enforcement of valid agreements to arbitrate. 9 U.S.C. § 2; TEX. CIV. PRAC. & REM. CODE § 171.021. Arbitrators are competent to decide any legal or factual dispute the parties agree to arbitrate. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 268–69 (2009); *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 232 (1987). Generally, a court may consider an arbitration agreement's terms to determine which issues must be arbitrated. *Forest Oil*, 268 S.W.3d at 61. But as parties have a right to contract as they see fit, they may agree to arbitral delegation clauses that send gateway issues such as arbitrability to the arbitrator. *Rent-A-Ctr.*, 561 U.S. at 68–70; *Forest Oil*, 268 S.W.3d at 61 & n.38. When faced with such an agreement, courts have no discretion but to compel arbitration unless the clause's validity is challenged on legal or public policy grounds. *Forest Oil*, 268 S.W.3d at 61. So the proper procedure is for a court to first determine if there is a binding arbitration agreement that delegates

6

arbitrability to the arbitrator. If there is such an agreement, the court must then compel arbitration so the arbitrator may decide gateway issues the parties have agreed to arbitrate. *See id.*

The court of appeals, however, did not limit its inquiry to the existence of a valid arbitration agreement; it instead refused arbitration based on its own determination of the arbitrability of the dispute. It did this apparently because "the unique facts of this case" permitted it to disregard the parties' agreement. *See* 559 S.W.3d at 175.

Newsome defends the court of appeals' decision, contending that the court must decide the issues presented in his bill of review because the court has exclusive jurisdiction to hear this direct attack on its prior final judgment. *See Richards v. Comm'n for Lawyer Discipline*, 81 S.W.3d 506, 508 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (dismissing a bill of review because it was not filed in the court that rendered the judgment under attack). He further relies on authorities explaining that a court's subject matter jurisdiction comes from operation of law and cannot be created by consent. *See Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex. 2000); *Fed. Underwiters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943). Combining these disparate authorities, Newsome concludes that the district court's jurisdiction is not only to the exclusion of other courts, but also to the exclusion of arbitration.

Unlike *Richards*, Newsome's bill of review was not filed in the wrong court, and none of Newsome's authorities concern arbitration or have any apparent application here. That a court has jurisdiction over a bill of review to the exclusion of all other courts does not speak to the issue of arbitrability. Arbitrators derive their jurisdiction over disputes from parties' consent and the law of contract. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989);

7

*Americo Life, Inc. v. Myer*, 440 S.W.3d 18, 21 (Tex. 2014). The Federal Arbitration Act preempts any state law that would interfere with parties' freedom to contract to arbitrate their disputes. *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017); *In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 888 (Tex. 2010). Reading grants of exclusive jurisdiction over a matter to a court to prohibit delegation of the matter to an arbitrator misunderstands arbitration and the preemptive effect of the Federal Arbitration Act.

Moreover, we have held that parties may contract to arbitrate issues even when the law vests some related exclusive power in a court. For example, in *CVN Group, Inc. v. Delgado* the parties signed an expansive arbitration agreement as part of a contract for construction of a home. 95 S.W.3d 234, 235 (Tex. 2002). After the buyers breached the contract, an arbitrator awarded the home builder damages and a mechanic's lien on the home. *Id.* The trial court refused to allow foreclosure on the lien and the court of appeals affirmed, reasoning the Constitution and Property Code's requirement that mechanic's liens be foreclosed by judicial action also required judicial review and approval of mechanic's liens. *Id.* at 236–37. We reversed, holding the arbitrator-awarded lien could be enforced because it did not contravene constitutional and statutory protections. *Id.* at 239. The dissent reasoned the mechanic's lien statute's requirement that "[a] mechanic's lien may be foreclosed only on judgment of a court" meant arbitrators could not decide disputes on underlying issues involving a lien's existence. *Id.* at 247–48 (Hankinson, J., dissenting). The Court disagreed, however, concluding this requirement did not prevent arbitration of issues related to the existence of a mechanic's lien. *See id.* at 239–40.

8

Newsome's argument echoes the dissent in *CVN Group*. Newsome contends that because the Structured Settlement Protection Act requires a court to approve the transfer of structured-settlement-payment rights, and because only the original court has jurisdiction to decide a bill of review attacking its final approval order, the issues raised in this context cannot be decided by an arbitrator. But as with the mechanic's lien in *CVN Group*, we find no inconsistency here between the statute's requirement that courts approve structured-settlement transfers and the arbitration of issues related to that approved transfer. Just as in *CVN Group* where the statute assigned foreclosure on mechanic's liens to a court, here the Legislature has assigned approval of structured-settlement transfers to the courts. TEX. CIV. PRAC. & REM. CODE § 141.004. As was the case with the mechanic's liens statute in *CVN Group*, the Structured Settlement Protection Act does not speak to arbitration at all. *See id.* §§ 141.001–007. While the statute requires a court to approve a settlement-payment transfer, it is silent as to who should decide disputes that arise after such approval, including disputes that require application of the court order itself. *See id.* In the face of such silence, we must apply the general rule that arbitrators are competent to decide any type of dispute. *See 14 Penn Plaza LLC v. Pyett*, 556 U.S. 246, 268–69 (2009). Even if the statute prohibited arbitration of certain disputes that would arise from the approval of structured-settlement transfers, the Federal Arbitration Act would preempt such a restraint on the freedom of contract in arbitration. See *Olshan*, 328 S.W.3d at 888.

Here, the courts below have not questioned the validity of parties' arbitration clause. We thus have no choice but to send this dispute to arbitration for the arbitrator to at least decide arbitrability. Accordingly, the court of appeals erred in affirming the trial court's refusal to compel arbitration on the grounds that the dispute in this case was not arbitrable.

9

## B

RSL urges us to go further and read the court of appeals' decision as applying the "wholly groundless" exception and to explicitly reject such an exception in Texas. The wholly groundless exception is a doctrine applied by some federal appellate courts to deny arbitration even in the face of an arbitral delegation clause.[1] Under the wholly groundless exception, the court may decline to enforce an arbitral delegation clause when no reasonable argument exists that the parties intended the arbitration clause to apply to the claim before it. *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 507 (6th Cir. 2011). Here, the court of appeals concluded that the dispute over the validity of the court's approval orders was "not relevant" and "had no bearing" on the parties' arbitrable disputes. 559 S.W.3d. at 175. RSL contends that this was in effect an adoption of the wholly groundless exception.

But the court of appeals does not mention the exception or discuss the federal cases that apply it. Nor has Newsome asked us to adopt the exception or any similar "relevance test" to deny enforcement of an otherwise valid arbitration agreement. The court of appeals did not refuse to enforce arbitration because it thought there was no reasonable argument that the arbitration agreement covered the parties' dispute. It refused to enforce arbitration because it decided this case offered "nothing for an arbitrator to determine." *Id.* In other words, the court decided the nature of the dispute made it non-arbitrable. It erred by skipping the first step in which it should have considered whether it could decide arbitrability in the face of the arbitral delegation clause. This

---

[1] The Fifth, Sixth and Federal Circuits apply the exception. See, e.g., *Douglas v. Regions Bank*, 757 F.3d 460, 462 (5th Cir. 2014); *Turi v. Main St. Adoption Servs., LLP*, 633 F.3d 496, 507 (6th Cir. 2011); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1371 (Fed. Cir. 2006). The Tenth and Eleventh Circuits have explicitly rejected it. *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1269 (11th Cir. 2017); *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1286 (10th Cir. 2017).

skipped step is where the wholly groundless exception would come into play if the court of appeals had intended to apply it. We conclude the validity of a wholly groundless exception or similar relevance test is not properly before us. We need not go any further than to hold the court of appeals erred by deciding arbitrability itself.

**IV**

Because it decided the case on arbitrability grounds, the court of appeals did not address Newsome's arguments that the agreement and thus the arbitration clause never came into effect or was unenforceable. As explained above, this was error; the court should have first decided whether a valid arbitration agreement exists. When presented with an issue the court of appeals could have but did not decide, we may either remand the case or consider the issue ourselves. TEX. R. APP. P. 53.4. We choose to decide this issue.

Newsome argues no enforceable arbitration agreement exists here because both of the district court's approval orders were void. In doing so, he relies on two cases that hold structured-settlement-transfer agreements are not validly formed or enforceable without court approval. *See Wash. Square Fin., LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 770 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *In re Rapid Settlements, Ltd.*, 202 S.W.3d 456, 461 (Tex. App.—Beaumont 2006, orig. proceeding [mand. denied]) (per curiam). Under this logic, Newsome argues that he cannot be compelled to arbitrate under the agreement either because the agreement never took effect without a valid court order or because the agreement cannot be enforced for some other reason such as being contrary to public policy.

11

There are three distinct ways to challenge the validity of an arbitration clause: (1) challenging the validity of the contract as a whole; (2) challenging the validity of the arbitration provision specifically; and (3) challenging whether an agreement exists at all. *In re Morgan Stanley & Co.*, 293 S.W.3d 182, 187 (Tex. 2009). These distinctions arise from the U.S. Supreme Court decision *Prima Paint Corp. v. Flood & Conkling Manufacturing Co.*, which held that arbitration clauses are separable from the contracts in which they are embedded. 388 U.S. 395, 404 (1967). Because an arbitration clause is separable from the rest of the contract, the arbitrator decides the first type of challenge. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (citing *Prima Paint*, 388 U.S. at 403–04). Classic contract defenses such as unconscionability, illegality and fraudulent inducement fall under this first type of challenge; the arbitrator decides them if they are alleged only against the contract as a whole. *E.g.*, *id.* at 66 (unconscionability); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (illegality); *Prima Paint*, 338 U.S. at 402–04 (fraudulent inducement). But *Prima Paint* does not encompass contract-formation challenges. *Morgan Stanley*, 293 S.W.3d at 187–88 & nn. 5–6. Contract formation defenses—such as whether a party ever signed a contract, whether a signor had authority to bind a principal, or whether the signor had capacity to assent—are thus threshold issues to be decided by the court. *Id.* at 189. This is because the Federal Arbitration Act requires a court to be "satisfied that the making of the agreement for arbitration . . . is not in issue" before compelling arbitration. 9 U.S.C. § 4. The Texas Arbitration Act, too, requires that the existence of an agreement to arbitrate be proven to the court before the court must compel arbitration. TEX. CIV. PRAC. & REM. CODE § 171.021(b).

Here, Newsome does not challenge the arbitration clause specifically. Rather, he contends that no enforceable arbitration agreement exists because the entire transfer agreement never came into existence or is not enforceable. Under the Structured Settlement Protection Act, "[n]o direct or indirect transfer of structured settlement payment rights shall be effective . . . unless the transfer has been approved in advance in a final court order" based on specified express findings. TEX. CIV. PRAC. & REM. CODE § 141.004. Assuming for the sake of argument that this provision requires the court to approve the parties' contract and not merely the structured-settlement-payment transfer, the effect of this provision on the arbitration clause depends on whether the challenge is to the contract's enforceability or its existence. Newsome cites cases that discuss the statute's effect on both the structured-settlement-transfer agreement's existence and its enforceability. *See, e.g.*, *Wash. Square*, 418 S.W.3d at 770 (enforceability); *Rapid Settlements*, 202 S.W.3d at 461 (formation).

For example, in *Washington Square*, the court of appeals held that contracts to transfer structured-settlement-payment rights are unenforceable as contrary to public policy unless court-approved. 418 S.W.3d at 770. The court, however, did not decide whether court approval is a condition precedent to the formation of the contract. *Id.* at 771 & n.8. The case did not involve a motion to compel arbitration; the issue was whether an unapproved contract could support a tortious-interference claim. *Id.* at 770–71. *Washington Square* is not helpful here because the court did not consider whether the lack of court approval rendered the transfer agreement a nullity.

In the arbitration context, the *Prima Paint* separability doctrine provides that the arbitrator is to decide any challenge to the enforceability of an existing contract. 388 U.S. at 404. Any contract defense that attacks the contract as a whole but does not go to the issue of contract formation must

13

be decided by the arbitrator. *See, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 66 (unconscionability); *Buckeye*, 546 U.S. at 443 (illegality); *Prima Paint*, 338 U.S. at 402-04 (fraudulent inducement). Voidness on public policy grounds as in *Washington Square* may provide a basis for revoking an existing contract but does not mean the agreement never formed in the first place. *See In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). Because voidness on public policy grounds, like illegality, is a defense to the contract's enforcement, it falls into the category that the *Prima Paint* line of cases delegates to the arbitrator. *See Buckeye*, 456 U.S. at 446. Consequently, when a party resisting arbitration argues the whole contract is void for violation of public policy, the arbitrator, not a court, decides the issue. We thus cannot decide here whether a transfer agreement lacking court approval under section 141.004 is void on public policy grounds or unenforceable for any other reason that does not go to contract formation because the doctrine of separability reserves such decisions for the arbitrator.

Newsome, however, also argues that section 141.004 of the Structured Settlement Protection Act creates a condition precedent to contract formation. That indeed was the holding of a court of appeals in another case Newsome cites. *See Rapid Settlements*, 202 S.W.3d at 461. Assuming that holding to be correct, a court would have an opportunity to decide at the outset whether a valid court order approved a structured-settlement-transfer agreement because the existence of the court order goes to contract formation, which the court decides before compelling arbitration. *See Morgan Stanley*, 293 S.W.3d at 187. Whether we may decide in this appeal if court approval is an issue of the underlying contract's formation depends on whether Newsome properly raised that issue below.

The primary thrust of Newsome's bill of review was for the trial court to declare the nunc pro tunc order void so Newsome could enforce the original approval order. Because Newsome's bill of review pleads that the approval order is valid and created an enforceable contract, the possible voidness of the nunc pro tunc order does not affect the existence of the agreement to arbitrate. The contract containing the agreement to arbitrate exists even if a question exists about whether the nunc pro tunc order corrected only a clerical error. Newsome seeks to enforce a contract approved by a court that contains an arbitration agreement and thereby concedes the existence of the agreement to arbitrate.

But Newsome's bill of review contains an "alternative" allegation that both the nunc pro tunc order and the original approval order are void, and Newsome mentions that possibility again in his appellate briefing without explanation. In fact, Newsome has no theory to support his conclusory attack on the original order. He did not even raise the issue in his trial court brief opposing RSL's motion to compel arbitration. Indeed, Newsome's petition for bill of review barely mentions the possibility, and his briefing in this Court is no better. A brief must provide citations or argument and analysis for the contentions and failure to do this can result in waiver. TEX. R. APP. P. 38.1(i), 38.2(a)(1); *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015). Newsome has failed to present any theory, analysis, or authority that puts the validity of the original approval order and thus formation of the contract to arbitrate in issue, and we conclude that the doctrine of separability reserves to the arbitrator all other questions raised in the district court. The court of appeals therefore erred in affirming the trial court's order denying arbitration.

\* \* \* \* \*

Having found the court of appeals erred and no merit in Newsome's alternative grounds to affirm, we reverse the court of appeals' judgment and remand the case to the trial court with instructions to grant the motion to compel arbitration.

_____
John P. Devine
Justice

Opinion Delivered: December 21, 2018