**Opinion issued July 31, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00496-CV

———————————

**MARY F. MASTERSON, Appellant**

**V.**

**SCI TEXAS FUNERAL SERVICES, LLC. D/B/A EARTHMAN RESTHAVEN CEMETERY, Appellee**

---

**On Appeal from the 295th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-01444**

---

## MEMORANDUM OPINION

Mary F. Masterson sued SCI Texas Funeral Services, LLC d/b/a Earthman Resthaven Cemetery ("SCI") after it denied her request to plant an oak tree on a cemetery easement near family burial plots. The trial court granted SCI's motion to compel arbitration, and it later confirmed the arbitration award in favor of SCI. On

appeal, Masterson argues that the trial court erred by ordering the parties to arbitrate, by confirming the arbitration award and denying her motion to vacate, and by overruling her motion for new trial.

Because we conclude that a valid arbitration agreement existed between the parties, including an express agreement that controversies regarding arbitrability would be submitted to the arbitrator, we conclude that the trial court did not err in referring the matter to arbitration and confirming the arbitrator's determination.

## Background

In 1991, John E. Masterson bought eight cemetery plots in Resthaven Memorial Park, a perpetual care cemetery, which now does business as Earthman Resthaven Cemetery under the ownership of SCI. The deed to the plots stated that it transferred "the exclusive right to sepulchre." It did not convey fee simple title. When John died in 2019, his adult daughter, Mary F. Masterson ("Masterson"), contracted with Earthman Resthaven Cemetery for a concrete vault and interment of her father's remains. The 2019 interment contract included an arbitration clause. In 2021, Masterson purchased a "bench easement" from the cemetery, and she signed a contract that included an arbitration clause nearly identical to the one in the 2019 contract. Masterson signed the 2019 interment and 2021 bench easement contracts in her own name.

In January 2022, Masterson filed suit against SCI alleging, among other things, that SCI had unlawfully denied her the right to plant an oak tree on the easement near her father's grave. Masterson referenced the 2019 contract and pleaded breach of contract and other claims. SCI answered and moved to compel arbitration based on the 2019 contract.

Masterson amended her petition, alleging that SCI unfairly denied her request to plant an oak tree in violation of the 2021 easement contract, which she was suing to enforce. SCI replied that the 2021 contract also required arbitration.

Masterson amended her petition a second time, alleging that SCI's denial of her request to plant an oak tree breached an oral agreement and adding a claim for tortious interference with property rights "including those acquired when the plots were purchased decades ago." She sought an injunction to prevent SCI from withholding permission for her "use of the easement as requested," and she sought attorney's fees for breach of contract, among other things.

In her original, first amended, and second amended petitions, Masterson referred to herself as "Plaintiff" and stated: "Plaintiff is a Harris County resident." Each petition included a sentence in the background alleging that she entered into the 2019 contract, 2021 contract, or oral agreement, respectively, "on behalf of the estate of John C. Masterson." Beneath her signature on each petition were the words, "Attorney for estate," but nothing in the pleading identified her as the

executor of the estate. The citation of service showed Masterson's name as plaintiff, and it made no mention of the suit being instituted by the executor of the estate.

SCI supplemented its motion to compel arbitration, and it attached an email showing that, hours before filing her second amended petition, Masterson agreed to arbitrate. SCI argued that Masterson's second amended petition was an attempt to circumvent the arbitration clauses in the 2019 and 2021 written contracts. Masterson responded that those contracts were irrelevant and that her claims had a "broad basis . . . including the plot purchase and deed transfer documents dating back decades ago."

At the hearing on the motion to compel arbitration, Masterson, who is a practicing attorney, appeared *pro se*. Masterson announced her appearance as "Mary Masterson," without mentioning she was appearing as the executor of the estate of her father. She argued that when her family acquired the plots, the presence of numerous trees on cemetery grounds indicated that "the property as purchased back then obviously contained allowances for trees." She asserted that those rights run with the land, citing the absence of restrictive covenants and other rules. She said that in 2021, SCI "promised me a trees easement. And then they gave me the bench agreement." She said that she accepted it because she was only ready to install a headstone and a bench at the time, but she said that since 2019

4

she had multiple conversations about a tree to be planted near her father's grave. When asked, Masterson told the court that she wanted to plant the tree "right next to the bench closer to the plot."

SCI argued that the purchase of the plots conveyed only interment rights, not fee simple title and that the 2021 easement contract governed the dispute about whether Masterson could plant a tree on the bench easement. SCI also asserted that because Masterson was suing in her individual capacity, she might not have the right to sue about property rights related to the plots. Masterson responded: "[M]y pleadings state: As executor–under the–my signature paragraph, attorney for estate. And that is the capacity in which I'm suing."[1]

The trial court granted the motion to compel arbitration and abated Masterson's suit pending arbitration. Shortly thereafter, in May 2022, SCI initiated arbitration proceedings against Masterson.

In the arbitration, Masterson asserted that the estate of John Masterson was the consumer and that she was acting in her capacity as the executor of the estate. She filed a dispositive motion challenging arbitrability, arguing that the dispute was not subject to arbitration because it did not arise from or seek a direct benefit from either the 2019 or 2021 contract. She argued that, in any event, she signed those contracts only in her individual capacity and, therefore, they did not bind her

---

[1] Masterson's pleadings do not expressly allege that she is suing as executor.

in her capacity as executor of her father's estate. She argued that other sources of statutory and common law formed the basis of her claims.

The arbitrator denied Masterson's dispositive motion, concluding that her claims were subject to arbitration. Masterson declined to participate further in the arbitration. Instead, and despite the ongoing abatement, Masterson filed a third amended original petition in the trial court in March 2023. Masterson did not seek leave to file her third amended petition,[2] nor did she move to lift the abatement. In her third amended petition, Masterson described herself as "executor of the estate of John C. Masterson" and alleged that she was suing "on behalf of the estate beneficiaries who own certain Burial Plots at Earthman Resthaven Cemetery, (Plot Owners) in Houston, Texas." She denied being a plaintiff and stated she had not "sue[d] in her individual capacity or as an estate beneficiary or as a Plot Owner." She asserted that SCI was interfering with the rights of the "Plot Owners" to reasonable use of the burial plots, "including the right to install a tree on or near the [b]urial [p]lots."

In addition to her third amended petition, and while the trial court's abatement was still in place, Masterson also filed in the trial court a notice of partial nonsuit without prejudice seeking to nonsuit "all claims for breach of

---

[2] Prior to the abatement, the trial court entered a docket control order setting the deadline to amend pleadings as January 6, 2023. Masterson never sought leave to amend her second amended petition beyond this deadline.

contract" and "all claims made for and on behalf of [Masterson] in her individual capacity." A few days later, she filed a second notice of partial nonsuit seeking to nonsuit without prejudice "all claims for fraudulent misrepresentation."

Meanwhile, SCI sought an arbitration award in its favor. Because Masterson had the burden of proof and refused to participate in the arbitration, and SCI had no outstanding counterclaims, SCI argued that it was not required to enter any evidence. Nonetheless, SCI provided the arbitrator with an initial submission, with attachments that included the 2019 interment and 2021 bench easement contracts and Earthman Resthaven Cemetery's rules. Both contracts included the following statement:

> **3. Cemetery Rules and Regulations.** Purchaser agrees that all rights conveyed under this Agreement are subject to, and Purchaser agrees to at all times comply with, the present (and as may be hereafter adopted, amended or altered) Rules and Regulations of Seller, which are available for examination in Seller's office. Purchaser acknowledges that a copy of the Cemetery's Rules and Regulations was provided to Purchaser for retention.

The arbitrator entered an award in favor of SCI, finding that SCI had not breached its agreements with Masterson by refusing her request to plant an oak tree on the cemetery easement because both contracts expressly incorporated the cemetery's rules, which require approval to plant a tree. The arbitrator noted that Masterson had not participated in the arbitration, and that, while the cemetery did not provide a reason for its denial of Masterson's request to plant a tree, it had the

7

contractual right to do so. The award stated that it was in "full settlement of all claims submitted" and "[a]ll claims not expressly granted herein are hereby denied."

On June 8, 2023, Masterson filed a motion to lift the trial court's abatement, and on June 12, 2023, SCI filed a motion to confirm the arbitration award in the trial court. Masterson filed a motion to vacate the award arguing the arbitrator had exceeded her authority by (1) failing to acknowledge the distinction in Masterson's capacity as an individual or executor and by disregarding how the law affects non-signatories to an arbitration agreement; (2) overruling Masterson's dispositive motion on lack of jurisdiction and arbitrability; and (3) making an arbitrability determination. Masterson later filed a motion for new trial, raising the same issues she raised in her motion to vacate the arbitration award and arguing about the lack of evidence presented in the arbitration proceedings.

The trial court granted Masterson's motion to lift the abatement on June 21, 2023, and on July 1, 2023, it granted SCI's motion to confirm the arbitration award and denied Masterson's motion to vacate and motion for new trial.

Masterson appealed.

8

## Analysis

## I.    Appellate Jurisdiction

On appeal, SCI argues this Court lacks jurisdiction based on two grounds. SCI first argues we lack jurisdiction over Masterson's appeal because, while she sued in her individual capacity in the trial court, she seeks to appeal in her capacity as executor of her father's estate. SCI argues that Masterson is precluded from suing in a different capacity on appeal. SCI next argues that even if Masterson had sued as executor of her father's estate in the trial court, she lacks standing to pursue her executor claims on appeal because the estate is now closed and the unidentified beneficiaries now have title to the burial plots under Texas law.

### A.    Masterson sued SCI in her individual capacity.

Masterson argues that she filed suit in her capacity as executor of her father's estate in the trial court. We reject this argument. In her original, first amended, and second amended petitions, Masterson identified herself as the plaintiff, and only her name appeared in the caption of the petitions. In each petition, she stated: "Plaintiff is a Harris County resident." A petition "shall state the names of the parties and their residences, if known . . . ." TEX. R. CIV. P. 78a. None of the petitions identified the plaintiff as the executor of the estate. In addition, the citation of service included only Masterson's name, and it made no mention of the suit being instituted by the executor of the estate. *See* TEX. R.

CIV. P. (b)(7) (citation must show names of parties). Masterson relies on a statement in the background of her petition that she entered into a contract or oral agreement "on behalf of" her father's estate and the informational tag following her signature on the petitions, which stated "Attorney for estate." Neither makes the executor of the estate the plaintiff in this case.[3] Nor does Masterson's statement that she was appearing in her capacity as executor of her father's estate during the hearing on SCI's motion to compel arbitration, which is contradicted by her written pleadings.

### B. Masterson's third amended petition did not effectuate an intervention as executor because it was filed in contravention of a court order.

Masterson argues that SCI waived any challenge to her proceeding in her capacity as executor on appeal because it failed to challenge capacity in the trial court. We reject this argument. The first pleading in which Masterson identified herself as the executor of her father's estate and alleged that she was suing only in that representative capacity was her third amended petition, which Masterson filed

---

[3] *See, e.g.*, *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) ("[D]ecedent's estate 'is not a legal entity and may not properly sue or be sued as such.'") (quoting *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex. 1975)); *Roundtree v. Stone*, 81 Tex. 299, 301, 16 S.W. 1035, 1036 (1891) (rejecting argument that plaintiffs had sued in representative capacity when petition included statement identifying plaintiffs as executors of estate, but substance of petition included allegation that they owned property in fee simple title); *In re Estate of Curtis*, 465 S.W.3d 357, 366 (Tex. App.—Texarkana 2015, pet. dism'd) (rejecting argument that corporate entity was appellant when not named in notice of appeal and only named in "informational tag following counsel's signature on the notice of appeal").

10

on March 15, 2023. The trial court's docket control order required the parties to file all amended and supplemental pleadings before January 6, 2023. Texas Rule of Civil Procedure 63 provides that "[p]arties may amend their pleadings . . . . at such time as not to operate as a surprise to the opposite party; provided, that any pleadings . . . offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained . . . ." TEX. R. CIV. P. 63. Masterson did not seek or obtain leave of court to file her third amended petition two months after the deadline in the docket control order, which was entered in accordance with Rule of Civil Procedure 166. Thus, Masterson's third amended petition was not properly 'filed,' and her live pleading was her second amended petition.

Masterson also filed two notices of partial nonsuit while the case was abated for arbitration. She purported to nonsuit any claims she previously raised in her individual capacity and any claims for breach of contract and fraudulent representation. But Masterson's nonsuits were not an "abandonment" of her claims, but rather an attempt to artfully plead her claim to avoid arbitration. *See, e.g.*, *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) ("[U]nder both Texas and federal law, arbitrability turns on the substance of a claim, not artful pleading."); *United Oil & Minerals, Inc. v. Costilla Energy, Inc.*, 1 S.W.3d 840, 846 (Tex. App.—Corpus Christi 1999, no pet.) (abandoning claims).

11

Masterson filed her nonsuits in conjunction with her third amended petition, where she advanced the same factual allegations in support of her claims. Thus, rather than ending litigation, Masterson's notices of nonsuit were an attempt to sidestep the pending arbitration and proceed in the trial court notwithstanding the trial court's order compelling her claims to arbitration. We conclude that Masterson's purported nonsuits were not an abandonment of her claims. *See AAA Free Move Ministorage, L.L.C. v. Latigo Props., Inc.*, No. 04-14-00075-CV, 2015 WL 1120330, at *1 (Tex. App.—San Antonio Mar. 11, 2015, no pet.) (mem. op.). Thus, at the time the trial court entered its order confirming the arbitration award, Masterson's live pleading was her second amended petition. In light of this conclusion and our analysis in section I.A., above, we hold that Masterson sued SCI in her individual capacity. Accordingly, we do not need to consider SCI's jurisdictional argument regarding the closure of the estate. *See* TEX. R. APP. P. 47.1.

**C.    This Court has jurisdiction over this appeal because there remains a justiciable controversy between Masterson and SCI.**

On appeal, SCI questions whether this Court has jurisdiction, arguing that Masterson does not have standing as an executor to prosecute this case. We have already concluded that the live pleading is the second amended petition, and that no claim was asserted in that petition by a representative of John Masterson's estate.

12

While the question of capacity is procedural and must be raised by a verified pleading in the trial court, standing is jurisdictional and may be raised at any time. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (contrasting standing and capacity). "In Texas, the standing doctrine requires that there be (1) a real controversy between the parties, that (2) will be actually determined by the judicial declaration sought." *Id.* (cleaned up).

We explained in sections I.A. and I.B, above, that Masterson brought suit as an individual, and her third amended petition, in which she alleged that she was proceeding as executor, was never properly before the trial court. Thus, there was neither reason nor necessity for SCI to challenge her capacity in the trial court. We further find that because Masterson is a party to the arbitration award, who raised challenges to the propriety of both the order compelling arbitration and the trial court's confirmation of the award, there remains a real controversy between her and SCI that will actually be determined by this Court's judgment. *See id.* Thus, we conclude that Masterson has standing, and this Court has jurisdiction over this appeal.[4] *See id.* Though Masterson purports to appear in this Court only as the

---

[4] The dissent argues that we lack appellate jurisdiction. We disagree, and we find that the authorities in the dissent are inapposite and distinguishable. In *Foreman v. Tex. Indep. Plaza, LLC*, No. 01-24-00274-CV, 2024 WL 4268025, at *2 (Tex. App.—Houston [1st Dist.] Sept. 24, 2024, pet. denied) (mem. op.), the Court considered whether it had appellate jurisdiction over Rachel Foreman, the owner of the tenant-entity that was the defendant in the trial court. 2024 WL 4268025, *1. Noting that Foreman was not a party in the underlying case, this Court held

that we lack jurisdiction over the appeal from a judgment rendered solely against the tenant-entity. *Id.* In this case, Mary Masterson was, in fact, a party to the case in the trial court. Thus, we conclude that *Foreman* is not controlling.

In addition, in a footnote, the dissent relies on three cases in which the appellant filed a notice of appeal individually, and the courts of appeals concluded that the appellant was not before the court in a representative capacity. *See McMahan v. Izen*, No. 01-20-00233-CV, 2021 WL 3919219, at *4 n.2 (Tex. App.—Houston [1st Dist.] Sept. 2, 2021, pet. denied) (mem. op.); *Funmilayo v. Aresco, LP*, No. 05-20-00492-CV, 2021 WL 5578019, at *4 (Tex. App.—Dallas Nov. 30, 2021, no pet.) (mem. op.) (applying *McMahan*); *White v. White*, No. 12-11-00107-CV, 2012 WL 1744977, at *2–3 (Tex. App.—Tyler May 16, 2012, pet. denied) (mem. op.). In two cases, the notice of appeal was filed pro se by a non-attorney in an individual capacity only, not disclosing that the individual intended to appeal in a representative capacity. *See McMahan*, 2021 WL 3919219, at *4 n.2; *Funmilayo*, 2021 WL 5578019, at *4. Ordinarily, a party to a suit may appear pro se to represent his rights, but a person serving in a representative capacity, such as an executor, may not. *See, e.g.*, TEX. R. CIV. P. 7; *Estate of Maupin*, No. 13-17-00555-CV, 2019 WL 3331463, at *2 (Tex. App.—Corpus Christi–Edinburg July 25, 2019, pet. denied) (mem. op.). *But see Suday v. Suday*, No. 24-1009, 2025 WL 1774459, at *3 (Tex. June 27, 2025) ("An executor may represent the estate pro se when she is also the sole beneficiary of the estate."). In *White*, an ex-wife sued her ex-husband's estate for child support arrearages, and the executrix answered only in her individual capacity. *White*, 2012 WL 1744977, at *2. When the court rendered judgment in favor of the ex-wife, the executrix filed a notice of appeal only in her individual capacity. *Id.* The court of appeals concluded that the executrix lacked standing because she was not the obligor and that the court of appeals lacked appellate jurisdiction because the notice of appeal did not disclose that the executrix was appearing in a representative capacity. *Id.* at *3.

The posture of this case is different. Though Masterson purported to appear only in a representative capacity, she herself filed a notice of appeal, which included her name, and she has standing to appeal as a party to litigation who remains personally aggrieved by the judgment. *See, e.g.*, TEX. R. APP. P. 25.1(d)(5) (notice of appeal must include name of party appealing). The Supreme Court of Texas has "never wavered from the principle that appellate courts should not dismiss an appeal for a procedural defect whenever any arguable interpretation of the Rules of Appellate Procedure would preserve the appeal." *Verburgt v. Dorner*, 959 S.W.2d 615, 616 (Tex. 1997). Unlike the cases in which the notice of appeal did not include the name of the represented party, this notice of appeal does include Masterson's name. We disagree with the dissent because we conclude that an

executor of her father's estate, we decline to construe her brief so narrowly as to deprive her of meaningful appellate review in light of our conclusions that she appeared only in an individual capacity in the trial court. *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) (noting that briefs must be construed liberally and reasonably so that right to appeal not lost by waiver).

## II.   The trial court properly compelled arbitration.

Most of Masterson's arguments about the trial court's order compelling arbitration are premised on her position that, at all times during this litigation, she acted in her capacity as executor of her father's estate. Because we have concluded that Masterson was acting in her individual capacity in the trial court, we need not address her arguments that challenge SCI's failure to prove a theory by which a nonsignatory to a contract can be compelled to arbitrate or that challenge the validity of the contract attached to SCI's motion to compel arbitration and supplement to the motion to compel arbitration. Those arguments would have been relevant only if Masterson had proceeded in her capacity as executor of the estate. *See* TEX. R. APP. P. 47.1.

However, liberally construing Masterson's brief, we consider whether the trial court abused its discretion by compelling arbitration in this case.

arguable interpretation of the Rules of Appellate Procedure preserves the appeal in this case. *See id.*

15

### A. Standards of Review

We review a trial court's ruling on a motion to compel arbitration for abuse of discretion, deferring to the trial court's factual determinations if they are supported by evidence but reviewing its legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). The validity and enforceability of an arbitration agreement and whether disputed claims fall within its scope are questions of law that we review de novo. *Henry*, 551 S.W.3d at 115; *Jetall Cos., Inc. v. Sonder USA Inc.*, No. 01-21-00378-CV, 2022 WL 17684340, at *5 (Tex. App.—Houston [1st Dist.] Dec. 15, 2022, no pet.) (mem. op.).

### B. Legal Standards for Compelling Arbitration

Neither of the 2019 and 2021 contracts designate whether the arbitration provisions are governed by the Federal Arbitration Act or the Texas Arbitration Act. *See* 9 U.S.C. §§ 1–402 (Federal Arbitration Act, "FAA"); TEX. CIV. PRAC. & REM. CODE §§ 172.001–.215 (Texas Arbitration Act, "TAA"). Under both statutes, a party seeking to compel arbitration must establish the existence of a valid agreement to arbitrate and a dispute within the scope of that agreement. *Lennar Homes of Tex. Land & Constr., Ltd. v. Whiteley*, 672 S.W.3d 367, 376 (Tex. 2023) (FAA); *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 519 (Tex. 2015) (TAA); *see* TEX. CIV. PRAC. & REM. CODE § 171.021(a) ("A court shall

order the parties to arbitrate on application of a party showing: (1) an agreement to arbitrate; and (2) the opposing party's refusal to arbitrate.").

"Because arbitration is a matter of contract, parties can agree that arbitrators, rather than courts, must resolve disputes over the validity and scope of their arbitration agreement." *TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 702 (Tex. 2023) (citing *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018)). Parties may delegate threshold questions of arbitrability to the arbitrator as long as the parties' agreement does so by "clear and unmistakable evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019); *accord RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 121 (Tex. 2018). For example, parties can include express language in the contract, including expressly adopting the AAA Commercial Arbitration Rules, which unmistakably delegate gateway issues of arbitrability to the arbitrator. *Darling Homes of Tex., LLC v. Khoury*, No. 01-20-00395-CV, 2021 WL 1918772, at *8 (Tex. App.—Houston [1st Dist.] May 13, 2021, no pet.) (mem. op.). When a valid arbitration agreement delegates gateway questions of arbitrability to the arbitrator, "courts have no discretion but to compel arbitration unless the [arbitration] clause's validity is challenged on legal or public policy grounds." *RSL Funding*, 569 S.W.3d at 121.

## C.      The 2021 Easement Contract

The 2021 easement contract includes the following arbitration clause:

Arbitration: Purchaser agrees that any claim he/she may have relating to the transaction contemplated by this agreement (including any claim or controversy regarding the interpretation of this arbitration clause) shall be submitted to and finally resolved by mandatory and binding arbitration in accordance with the applicable rules of the American Arbitration Association ("AAA"); provided, however, that the foregoing reference to the AAA rules shall not be deemed to require any filing with that organization, nor any direct involvement of that organization. The arbitrator shall be selected by mutual agreement of the parties. If the parties fail to or are unable to agree on the selection of an appropriate arbitrator, the AAA shall select the arbitrator pursuant to its rules and procedures upon the application of one or both parties. This agreement to arbitrate also applies to any claim or dispute between or among the seller, you as the purchaser, any person who claims to be a third party beneficiary of this agreement, any of the seller's employees or agents, any of the seller's parent, subsidiary, or affiliate corporations, and any of the employees or agents of those parent, subsidiary or affiliate corporation. Except as may be required by law, neither party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.[5]

In her brief, Masterson acknowledges that she signed the 2019 and 2021 contracts in her individual capacity. App. Br. 39. Aside from her arguments premised on her position that she litigated only in her capacity as executor of her father's estate, Masterson raises no arguments challenging the validity of the arbitration provision. We thus conclude that Masterson is bound by the contracts she signed, including the arbitration provision. *See, e.g.*, *Venture Cotton Co-op. v.*

---

[5]      This clause appeared capitalized ('all caps') and in bold in the contract. For ease of reading, we do not replicate that formatting in this opinion.

18

*Freeman*, 435 S.W.3d 222, 228 (Tex. 2014) ("Unambiguous contracts . . . are presumed to reflect the intent of the contracting parties and are generally enforced as written . . . .").

The arbitration provision requires arbitration to be conducted in accordance with the applicable rules of the American Arbitration Association. AAA Commercial Rule 7(a) provides: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." https://www.adr.org/media/lwanubnp/2025_commercialrules_web.pdf (last visited July 23, 2025). "[A]n agreement to arbitrate in accordance with the AAA or similar rules constitutes a clear and unmistakable agreement that the arbitrator must decide whether the parties' disputes must be resolved through arbitration." *TotalEnergies E&P USA, Inc.*, 667 S.W.3d at 708. Accordingly, we conclude that the parties clearly and unmistakably delegated gateway issues of arbitrability to the arbitrator, including the validity and scope of the arbitration clause. *See Henry Schein*, 586 U.S. at 69; *RSL Funding*, 569 S.W.3d at 121. Accordingly, the trial court had no discretion but to compel arbitration in this case. *See RSL Funding*, 569 S.W.3d at 121. We hold that the trial court did not abuse its discretion by compelling arbitration, and we overrule Masterson's first issue.

**III. The trial court did not err by confirming the arbitration award and denying the motion for new trial.**

In her second issue, Masterson argues that the trial court erred by confirming the arbitration award and denying her motion to vacate. On appeal, Masterson argues that there was no agreement to arbitrate because she brought her claims as the executor of her father's estate, that her claims as executor are independent of any arbitration contract, and that the arbitrator had no jurisdiction to adjudicate her individual rights because she was a nonparty. We explained in section I.A., above, that Masterson's pleadings were brought in her individual capacity. We therefore do not address these arguments any further. *See* TEX. R. APP. P. 47.1. Masterson also argues that the arbitrator exceeded her authority by failing to consider her third amended petition as the relevant pleading. In section I.B., above, we explained that Masterson's third amended petition was not effective because it was filed while the case was abated. We therefore do not address this argument either. *See id.*

Masterson's remaining arguments in her second appellate issue are that the arbitrator exceeded her authority because she had no power to adjudicate rights that were not conveyed in the SCI contracts, *see* App. Br. 63–64, and that the contracts are illusory, unconscionable, and unenforceable, *see id.* 64–67.

**A.    Standards of Review**

20

We review de novo a trial court's confirmation of an arbitration award based on a review of the entire record. *Infinity Cap. II, LLC v. Strasburger & Price, LLP*, No. 01-15-00691-CV, 2016 WL 4254137, at *3 (Tex. App.—Houston [1st Dist.] Aug. 11, 2016, pet. denied) (mem. op.) (TAA); *Fogal v. Stature Constr., Inc.*, 294 S.W.3d 708, 718 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (FAA). Except when an arbitration agreement under the TAA provides for expanded judicial review of an arbitration award,[6] judicial review of an arbitration award is "extraordinarily narrow,"[7] and focused "on the integrity of the arbitration process, not on the propriety of the result."[8]

In conducting such a review, a trial court must confirm an arbitrator's award upon a party's application, unless statutory grounds are offered for vacating the award. *See* 9 U.S.C. §§ 9–11; TEX. CIV. PRAC. & REM. CODE § 171.087. One such ground for vacating an arbitration award that is common under the FAA and TAA

---

[6] Under the TAA, parties may contract for expanded judicial review of an arbitration award. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91 (Tex. 2011). Nothing in the 2019 or 2021 contracts provides for expanded judicial review of an arbitration award, and the parties have not argued for expanded judicial review of the award in this case.

[7] *E. Tex. Salt Water Disposal Co. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010).

[8] *Women's Reg'l Healthcare, P.A. v. FemPartners of N. Tex., Inc.*, 175 S.W.3d 365, 367–68 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

21

is that the arbitrators exceeded their powers.[9] *See* 9 U.S.C. § 10; TEX. CIV. PRAC. & REM. CODE § 171.088. "Generally, an arbitrator's powers are determined by agreement of the parties." *Nafta Traders*, 339 S.W.3d at 95. An arbitrator exceeds her power by deciding a matter that the parties did not agree to submit to arbitration. *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Ass'n, Inc.*, 509 S.W.3d 367, 372–73 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *W. Dow Hamm III Corp. v. Millennium Income Fund*, L.L.C., No. 01-12-00313-CV, 2013 WL 978263, at *4 (Tex. App.—Houston [1st Dist.] Mar. 12, 2013, pet. denied) (mem. op.). But an arbitrator does not exceed her authority by making a mistake of law or fact. *Infinity Cap.*, 2016 WL 4254137, at *3.

### B. Masterson's argument that the arbitrator exceeded her authority by adjudicating rights not conveyed in the SCI contracts lacks merit.

Masterson argues that the arbitrator incorrectly interpreted the arbitration provision and the contracts as incorporating by reference the cemetery's rules and regulations. She asserts that the right to plant a tree in the cemetery is an inherited property right. *See* App. Br. 64. This argument asserts that the arbitrator erred in

---

[9]     The FAA permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made," while the TAA states that vacatur is available "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4); TEX. CIV. PRAC. & REM. CODE § 171.088(a)(3)(A).

her construction of the parties' contracts and determination of the scope of the arbitrability agreement. Masterson's argument fails on both grounds.

To the extent Masterson is challenging the arbitrator's authority to determine the scope of the arbitration agreement, we already concluded in section II.C., that the parties delegated the gateway questions of arbitrability, including the scope of the arbitration agreement to the arbitrator. Masterson's disagreement with the arbitrator's decision concerning the scope of the arbitration agreement and her conclusion that Masterson's claims were subject to arbitration are not grounds for vacatur. *See* 9 U.S.C. § 10; TEX. CIV. PRAC. & REM. CODE § 171.088.

Masterson's argument that the arbitrator exceeded her authority in concluding that the cemetery rules were incorporated into the contracts and thus applicable similarly misses the mark. Masterson's argument is not that the arbitrator had no power to make this determination, but that she made a mistake of law or fact in doing so. This is not grounds for vacatur. *E.g.*, *Infinity Cap.*, 2016 WL 4254137, at *3.

### C.  Masterson's argument that the arbitration provision is illusory also lacks merit.

Masterson argues that the arbitration provision is illusory because it does not require SCI to arbitrate all claims against Masterson. Relying on *SCI Tex. Funeral Services, Inc. v. Leal*, No. 13-09-00050-CV, 2009 WL 332043, at *5 (Tex. App.—Corpus Christi–Edinburg Feb. 12, 2009, no pet.) (mem. op.), which centered on a

23

similar arbitration provision, she argues that the agreement to arbitrate is illusory because it lacks mutuality.

"An arbitration agreement is illusory if it binds one party to arbitrate, while allowing the other to choose whether to arbitrate."[10] *Royston, Rayzor, Vickery, & Williams, LLP v. Lopez*, 467 S.W.3d 494, 505 (Tex. 2015). But the fact that an arbitration agreement is one-sided or binds the parties to arbitrate only certain disagreements does not make it illusory. *Id.* This is especially true when the arbitration agreement is part of a larger underlying contract supported by consideration. *Id.* "[W]hen an arbitration clause is part of an underlying contract, the rest of the parties' agreement provides the consideration." *In re AdvancePCS Health, L.P.,* 172 S.W.3d 603, 607 (Tex. 2005).

The arbitration agreements here are not stand-alone agreements; they are part of the 2019 interment and 2021 easement contracts. While the arbitration agreements lack mutuality, the 2019 and 2021 contracts were supported by valid

---

[10] *Compare Serv. Corp. Int'l v. Ruiz*, No. 13-16-00699-CV, 2018 WL 549196, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 25, 2018, pet. denied) (mem. op.) (holding that arbitration provision was not illusory when part of larger contract "supported by valid consideration in the form of mutual, binding promises"—including promise to pay, liquidated damages, limitations on assignability, and agreement to arbitrate—and in absence of provision affording SCI unilateral right to avoid contract), *with SCI Tex. Funeral Servs, Inc. v. Leal*, No. 13-09-00050-CV, 2009 WL 332043, at *6 (Tex. App.—Corpus Christi–Edinburg Feb. 12, 2009, no pet.) (mem. op.) (concluding that arbitration provision was illusory because SCI was not required to arbitrate contracts that included additional term allowing SCI to "void the agreement at its sole discretion due to an 'unforeseen contingency' or 'mistake'").

consideration in the form of mutual, binding promises. Masterson agreed to pay SCI and to arbitrate claims, in exchange for SCI's corresponding promises to provide goods, services, and legal authorization for her to inter her father's remains and place a bench near his grave. The binding promises between Masterson and SCI supported the interment and easement agreements, and the arbitration clauses included in the contracts. We conclude that the arbitration agreements are not illusory. *See Serv. Corp. Int'l v. Ruiz*, No. 13-16-00699-CV, 2018 WL 549196, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 25, 2018, pet. denied) (mem. op.).

We overrule Masterson's second issue.[11]

## IV. Motion for new trial

In her third issue, Masterson argues that the trial court abused its discretion by denying her motion for new trial and not vacating the arbitration award. In the trial court, she argued that the evidence was legally and factually insufficient to support the arbitrator's determination of arbitrability. Masterson also argues that the trial court should have granted the motion for new trial because the "Executor's claims exist independently of the SCI contracts," and "the SCI Contracts are illusory, unconscionable, and unenforceable."

---

[11] On appeal, Masterson uses the words "unconscionable" and "unenforceable" to augment her argument that they were illusory. She did not, however make any other independent argument or analysis for unconscionability or unenforceability. In light of our analysis in section III.C., we do not need to address this argument further. *See* TEX. R. APP. P. 47.1.

25

To the extent that Masterson's argument reiterates her arguments about the trial court's ruling on her motion to vacate the arbitration award, in light of our analysis in sections III.B and III.C, above, we need not address this argument further. *See, e.g.*, TEX. R. APP. P.47.1. To the extent that Masterson challenges the legal and factual sufficiency of the evidence to support the arbitrator's arbitrability determination, we have already explained in section III.B that an arbitrator's mistake of law or fact is not grounds for vacatur.

Accordingly, we overrule Masterson's third issue.

## Conclusion

We affirm the judgment of the trial court.


Susanna Dokupil
Justice

Panel consists of Justices Rivas-Molloy, Johnson, and Dokupil.